IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM R. PERPETUA, RYAN D. WAHALA and DENNIS M. WATSON on behalf of themself and all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN GREENBERG MANAGEMENT, LTD, *dba* GREENBERG APARTMENT COMMUNITIES,<br><br>Defendant. | CASE NO.: 1:23-cv-2142<br><br>JUDGE: _____<br><br>**JURY DEMANDED** |

**COLLECTIVE ACTION COMPLAINT**

This is an action brought by William R. Perpetua, Ryan D. Wahala, and Dennis M. Watson ("Named Plaintiff") on behalf of himself and all current and former similarly situated employees who worked for Steven Greenberg Management, LTD doing business as Greenberg Apartment Communities ("Defendant") at any time within the period of three (3) years preceding the granting of court-supervised notice through the date of judgment (the "Potential Opt-In Plaintiffs") to recover compensation, liquidated damages, compensatory damages, punitive damages, attorneys' fees and costs, and other equitable relief pursuant to the provisions of Sections 203, 206, and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. § 216(b), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 *et seq.*, (the "Ohio Wage Act"), the

1

Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be collectively referred to as the "Ohio Acts") and O.R.C. § 2307.60.

The following allegations are based on personal knowledge as to Named Plaintiff's own conduct and are made on information and belief as to the acts of others.

## I. JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to federal question jurisdiction under 28 U.S.C. § 1331, in that this case arises under a federal law of the United States.

2. This Court has supplemental jurisdiction over Named Plaintiffs' Ohio Acts claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Named Plaintiffs' claims under the FLSA that they form part of the same controversy.

3. Venue in the Northern District of Ohio is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the unlawful conduct described herein occurred within Cuyahoga County, Ohio.

## II. THE PARTIES

4. William R. Perpetua ("Plaintiff Perpetua") is an adult resident of Broadview Heights, Ohio residing at 700 Vineyard Drive, Apt. 401, Broadview Heights, Ohio 44147, and was formerly employed by Defendant as a Maintenance Tech. Plaintiff Perpetua began employment for Defendant on approximately July 2019 and remains employed as of the date of the filing of this Complaint. His consent form is being filed along with this Complaint pursuant to 29 U.S.C. § 216(b) and is attached hereto as **Exhibit A**.

5. Ryan D. Wahala ("Plaintiff Wahala") is an adult resident of Broadview Heights, Ohio residing at 300 Vineyard Drive, Apt. 101, Broadview Heights, Ohio 44147, and was formerly employed by Defendant as a Maintenance Tech. Plaintiff Wahala began employment for

Defendant on approximately August 1, 2020 and remains employed as of the date of the filing of this Complaint. His consent form is being filed along with this Complaint pursuant to 29 U.S.C. § 216(b) and is attached hereto as **Exhibit B**.

6. Dennis M. Weston ("Plaintiff Weston") is an adult resident of Broadview Heights, Ohio residing at 700 Vineyard Drive, Apt. 101, Broadview Heights, Ohio 44147, and was formerly employed by Defendant as a Maintenance Tech. Plaintiff Perpetua began employment for Defendant on approximately June 30, 2008 and remains employed as of the date of the filing of this Complaint. His consent form is being filed along with this Complaint pursuant to 29 U.S.C. § 216(b) and is attached hereto as **Exhibit C.**

7. Steven Greenberg Management, LTD ("Defendant") is a limited liability company doing business as Greenberg Apartment Communities licensed to do business in Ohio and currently doing business at 1200 Vineyard Drive, Broadview Heights, Ohio 44147. Process may be served upon its Registered Agent, DHP Landerbrook, Inc., 6105 Parkland Boulevard, Suite 100, Cleveland, Ohio 44124.

8. Steven Greenberg Management, LTD manages other properties and employs Maintenance Techs in the same manner as the Named Plaintiffs.

### III. STATEMENT OF FACTS

9. During all times material to this Complaint, Defendant was an "employer" within the meaning of the FLSA and the Ohio Acts.

10. During all times material to this Complaint, Defendant employed Named Plaintiff and the Potential Opt-In Plaintiffs within the meaning of the FLSA and the Ohio Acts.

11. During all times material to this Complaint, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of

the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

12. During all times material to this Complaint, Named Plaintiff and the Potential Opt-In Plaintiffs have been Defendant's employees and have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07.

13. During all times material to this Complaint, Defendant was in the business of rental property management and hired Named Plaintiffs and the Potential Opt-In Plaintiffs to work for Defendant's benefit as Maintenance Technicians.

14. During all times material to this Complaint, Named Plaintiffs and the Potential Opt-In Plaintiffs were paid at an hourly rate, not on a salary or fee basis as described in 29 C.F.R. § 541.301 and thus were non-exempt employees entitled to be paid at least the minimum wage for all hours worked and overtime at 150% of their regular rate for all hours worked over forty (40) in a workweek.

15. During all times material to this Complaint, Named Plaintiffs and the Potential Opt-In Plaintiffs were required to sign an Employee Apartment Agreement as a condition of their employment with Defendant.

16. The Employee Apartment Agreement states that the Defendant is adding the value of the two-bedroom apartment in non-exempt employee's overtime calculation.

17. Name Plaintiffs and the Potential Opt-In Plaintiffs typically work from 8:00 to 5:00 p.m. at an hourly rate of $21.50.

18. Name Plaintiffs split their time outside of their regular work hours (8:00 a.m. to 5:00 p.m.) equally in order to have somebody who is on-call 24/7. Therefore, Name Plaintiffs are each on-call approximately 33% of the time of each week.

19. Specifically, Plaintiff Perpetua is on-call every Monday night, every third weekend (for the entirety of the weekend), and rotates Thursdays evenings with Defendant's other Maintenance Technicians.

20. Specifically, Plaintiff Wahalla is on-call every Wednesday night, every third weekend (for the entirety of the weekend) and rotates Thursdays evenings with Defendant's other Maintenance Technicians.

21. specifically, Plaintiff Weston is on-call every Tuesday night, every third weekend (for the entirety of the weekend) and rotates Thursdays evenings with Defendant's other Maintenance Technicians

22. Regardless of their differing scheduled shifts, Name Plaintiffs and the Potential Opt-In Plaintiffs almost always work over forty (40) hours every workweek because of the work that would arise while they were on-call.

23. During Name Plaintiffs' and the Potential Opt-In Plaintiffs' time on-call, they are required to be readily available to any resident who may have maintenance issues arise, including any issues that occur throughout the middle of the night.

24. Name Plaintiffs and the Potential Opt-In Plaintiffs typically receive at least one phone call each day or night that they are on-call.

25. When Name Plaintiffs and the Potential Opt-In Plaintiffs receive a call from a resident, Defendant requires them to be at the resident's apartment to fix the issue within ten (10) minutes of receiving the call.

26. Upon arriving at a resident's apartment, they are to stay and fix whichever maintenance issue has occurred (whether electrical, plumping, etc.), and stay for however long that it might take. Each call varies in the length of time it takes to fix—some issues take twenty (20) minutes to fix, while others take four (4) to five (5) hours.

27. On snowy days during the winter, Name Plaintiffs and the Potential Opt-In Plaintiffs oftentimes have to do snow removal while on-call. This process typically takes up to ten (10) hours to complete.

28. Regardless of the hours that Name Plaintiffs and the Potential Opt-In Plaintiffs work while on-call, any hours worked over forty (40) hours in a workweek have never been paid at the statutorily mandated overtime rate.

29. Indeed, it is Defendant's common practice to only pay Name Plaintiffs' and the Potential Opt-In Plaintiffs' respective overtime hours as straight hours—paying them at their regular hourly rates for all hours worked over forty (40) in a workweek.

30. In approximately August 2023, Named Plaintiffs complained to Defendant that they were not being compensated for completing their on-call services at the correct rate of 150% of their regular rate for all hours they worked beyond forty (40) in a workweek.

31. In response to their complaints, Defendant raised their hourly rate to $24.50 on October 1, 2023—a three (3) dollar raise. However, when Name Plaintiffs and the Potential Opt-In Plaintiffs work over forty (40) hours a week to complete on-call services, they are still being

paid these overtime hours as straight hours—making $24.50 for all hours worked over forty (40) in a workweek.

32. As a result, Defendant failed to pay Name Plaintiffs' and the Potential Opt-In Plaintiffs' respective overtime hours at a rate of 150% of their regular rate for all hours worked over forty (40) in a workweek.

33. Upon information and belief, Defendant was aware that the Name Plaintiffs and the Potential Opt-In Plaintiffs do not receive the correct amount of overtime pay and permits this to occur on a companywide basis.

34. Further, per Defendant's Employee Apartment Agreement, Name Plaintiffs and the Potential Opt-In Plaintiffs were required to sign a contract that said, "I understand that I am … an employee who is *partly compensated* for my employment through occupancy of the apartment." The Employee Apartment Agreement is attached hereto as **Exhibit D.**

35. This contractual agreement also provides that Defendant "is providing the value of a one-bedroom apartment in [an employee's] overtime calculation."

36. Defendant intended Name Plaintiffs and the Potential Opt-In Plaintiffs living on Defendant's premises rent-free in exchange for their maintenance services being readily available as a mutual benefit and as part of their compensation.

37. However, despite the contractually intended compensation through occupancy of the apartments, on approximately October 1, 2023, Defendant took away Name Plaintiffs' and the Potential Opt-In Plaintiffs' rent-free living, requiring them to now pay rent at a forty percent (40%) discounted rate.

38. This failure to include rent as payment, as contractually agreed upon, and failure to pay for all hours worked over forty (40) in a workweek at a rate of 150% of Name Plaintiffs' and

the Potential Opt-In Plaintiffs' respective regular rate, constitutes a violation of both Ohio and federal overtime wage requirements.

39. As of the filing of this Complaint, Name Plaintiffs and the Potential Opt-In Plaintiffs have not been paid all of the wages they earned while working for Defendant, and those unpaid wages have gone unpaid for more than thirty (30) days.

40. Defendant knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay the Name Plaintiffs and the Potential Opt-In Plaintiffs at a rate of 150% of their regular rate for all hours they worked beyond forty (40) in a workweek in this action.

IV. **COURT SUPERVISED NOTICE PURSUANT TO 29 USC § 216(b) ALLEGING FLSA VIOLATIONS**

41. Named Plaintiffs re-allege, and incorporates by reference, the allegations set forth in the preceding paragraphs.

42. Named Plaintiffs request that the Court issue Court Supervised Notice to the following group of current and former employees defined as:

> **All current and former hourly Maintenance Technicians employed by Steven Greenberg Management, LTD at any time within the period of 3 years preceding the filing of Named Plaintiffs Motion for Court Supervised Notice through the date of judgment who were not paid at a rate of 150% of their respective regular rates for all hours worked over forty (40) in a workweek. (FLSA Notice Group" or "Potential Opt-in Plaintiffs").**

43. Named Plaintiffs reserve the right to amend and refine the definition of the FLSA Notice Group they seek to have the Court serve notice based upon further investigation and discovery.

44. At all times hereinafter mentioned, Defendant has been an enterprise within the meaning of Section 203(r) of the FLSA, 29 U.S.C. § 203(r).

45. At all times hereinafter mentioned, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

46. During the respective period of the Named Plaintiffs' and the Potential Opt-in Plaintiffs' employment by Defendant, these individuals have provided services for Defendant that involved interstate commerce for purposes of the FLSA.

47. In performing the operations hereinabove described, Named Plaintiffs and the Potential Opt-in Plaintiffs have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

48. Specifically, Named Plaintiffs and the Potential Opt-in Plaintiffs were non-exempt Maintenance Tech employees of Defendant who assisted clients, wherever they were from. 29 U.S.C. § 203(j).

49. At all times hereinafter mentioned, Named Plaintiffs and the Potential Opt-in Plaintiffs are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07.

50. The precise size and identity of the FLSA Notice Group should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendant.

51. Collective action treatment of Named Plaintiff's and the Potential Opt-in Plaintiffs' claims is appropriate because they have been subjected to the common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including *inter alia*, whether Defendant satisfied the FLSA's requirements for payment of the statutory overtime wages.

52. Further, Named Plaintiffs' FLSA claims should proceed as a collective because Named Plaintiffs and the Potential Opt-in Plaintiffs, having willfully not been paid at a rate of at least 150% of their regular rate for hours worked beyond forty (40) in a workweek pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

53. Named Plaintiffs maintain that there is a strong likelihood that he and the Potential Opt-in Plaintiffs similarly situated as to the facts and theories regarding Defendant's violations of the FLSA during the relevant time period, which amount to a single decision, policy, or plan to willfully avoid paying all earned federal overtime wages.

54. Named Plaintiffs maintain that there is a strong likelihood that they and the Potential Opt-in Plaintiffs are similarly situated as to the facts and theories regarding any of Defendant's alleged affirmative defenses to violations of the FLSA during the relevant time period.

55. Named Plaintiffs maintain that there is a strong likelihood that they and the Potential Opt-in Plaintiffs are similarly situated such that ultimate certification of a collective will be the most efficient way to try this matter.

56. The names and addresses of the Potential Opt-in Plaintiffs are available from Defendant's records. For the purpose of notice and other purposes related to this action, their

names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the FLSA.

57. Named Plaintiff and the Potential Opt-in Plaintiffs have been similarly damaged by Defendant's willful refusal to pay the federally mandated overtime rate for all hours worked beyond forty (40) in a workweek. As a result of Defendant's FLSA violations, they are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

V. **CAUSES OF ACTION**

**COUNT I**
**FAILURE TO PAY OVERTIME WAGES**
**IN VIOLATION OF THE FLSA**

58. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

59. At all relevant times, Defendant was an employer within the meaning of the FLSA.

60. At all relevant times, Named Plaintiffs and the Potential Opt-in Plaintiffs were employees of Defendant within the meaning of the FLSA.

61. At all relevant times, the FLSA requires employers to pay non-exempt employees for all hours worked and at a rate not less than one and one-half times their properly calculated "regular rate" for all hours worked beyond forty (40) in a workweek.

62. Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

63. At all relevant times, Named Plaintiff and the Potential Opt-in Plaintiffs were not employed by Defendant in a job classification and did not perform job duties which were consistent with a bona fide executive, administrative, professional, outside sales, or computer employee

exempt from the FLSA's mandate to pay at least the federal minimum wage for all hours worked and the statutory overtime wage for all hours worked in excess of forty (40) in a workweek.

64. As detailed above, Defendant failed to pay Named Plaintiff and the Potential Opt-In Plaintiffs for all their hours worked. This failure resulted in Defendant not paying Named Plaintiff and the Potential Opt-In Plaintiffs all their overtime compensation.

65. As detailed above, Defendant failed to include in Named Plaintiffs' and the Potential Opt-In Plaintiffs' regular rate of pay all forms of remuneration, such as the rent and utilities, that they earned for purposes of computing overtime compensation. This failure resulted in Named Plaintiffs and the Potential Opt-In Plaintiffs not being paid all of their overtime compensation.

66. As a result of Defendant's violations of the FLSA, Named Plaintiffs and the Potential Opt-In Plaintiffs were injured in that they did not receive overtime compensation due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles them to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT II
## OVERTIME VIOLATIONS OF THE OHIO WAGE ACT

67. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

68. At all relevant times, Defendant was an employer within the meaning of the Ohio Wage Act.

69. At all relevant times, Named Plaintiffs and the Potential Opt-in Plaintiffs were employees of Defendant within the meaning of the Ohio Wage Act.

70. At all relevant times, the Ohio Wage Act requires employers to pay non-exempt employees for all hours worked and at a rate not less than one and one-half times their properly calculated "regular rate" for all hours worked beyond forty (40) in a workweek.

71. The Ohio Wage Act provides that covered employees shall be compensated for every hour worked in one workweek.

72. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

73. At all relevant times, Named Plaintiffs and the Potential Opt-in Plaintiffs were not employed by Defendant in a job classification and did not perform job duties which were consistent with a bona fide executive, administrative, professional, outside sales, or computer employee exempt from the Ohio Wage Act's mandate to pay at least the Ohio minimum wage for all hours worked and the statutory overtime wage for all hours worked in excess of forty (40) in a workweek.

74. As detailed above, Defendant failed to pay Named Plaintiffs and the Potential Opt-In Plaintiffs for all their hours worked. This failure resulted in Defendant not paying Named Plaintiffs and the Potential Opt-In Plaintiffs all their overtime compensation.

75. As detailed above, Defendant failed to include in Named Plaintiffs' and the Potential Opt-In Plaintiffs' regular rate of pay all forms of remuneration, such as the rent and utilities, that they earned for purposes of computing overtime compensation. This failure resulted in Named Plaintiffs and the Potential Opt-In Plaintiffs not being paid all of their overtime compensation.

76. As a result of Defendant's violations of the Ohio Wage Act, Named Plaintiffs and the Potential Opt-In Plaintiffs were injured in that they did not receive overtime compensation due to them pursuant to the Ohio Wage Act.

**COUNT III**
**VIOLATION OF THE OHIO PROMPT PAY ACT ("OPPA")**
**FAILURE TO PROMPTLY PAY WAGES**

77. Named Plaintiffs re-allege, and incorporates by reference, the allegations set forth in the preceding paragraphs.

78. At all relevant times, Defendant was an entity covered by the OPPA's provisions. *See* O.R.C. § 4113.15.

79. At all relevant times, Named Plaintiffs and the Potential Opt-in Plaintiffs were covered employees within the meaning of OPPA.

80. The OPPA provides that employers shall pay covered employees all wages, including overtime, on or before the first day of each month for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned during the preceding calendar month.

81. At all relevant times, Defendant refused to pay Named Plaintiffs and the Potential Opt-in Plaintiffs all wages at the statutorily mandated Ohio overtime wage rate, within thirty (30) days of performing the work.

82. Named Plaintiffs' and the Potential Opt-in Plaintiffs' wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

83. Defendant's violations of the OPPA have been of a willful, intentional, or bad faith nature or Defendant has otherwise exhibited a reckless disregard for the OPPA's provisions.

84. Named Plaintiffs and the Potential Opt-in Plaintiffs are entitled to six percent (6%) of the wages or a minimum of $200.00 for violations of the OPPA and attorneys' fees.

## COUNT IV
## CIVIL PENALTIES FOR CRIMINAL ACTS
## O.R.C. § 2307.60

85. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

86. The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

87. By its acts and omissions described herein, Defendant has willfully violated the FLSA, and Named Plaintiffs and the Potential Opt-in Plaintiffs have been injured as a result.

88. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

89. As a result of Defendant's willful violations of the FLSA, Named Plaintiffs and the Potential Opt-in Plaintiffs are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiffs pray that this Court enter the following relief:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b) and direct that Court-approved notice be issued to the Potential Opt-In Plaintiffs informing them of this action and enabling them to opt in;

B. Enter judgment against Defendant and in favor Named Plaintiff and the Potential Opt-In Plaintiffs who join this case;

C. Award compensatory damages to Named Plaintiff and the Potential Opt-In Plaintiffs who join this case in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount for Defendant's FLSA overtime violations;

D. Award Named Plaintiff and the Potential Opt-In Plaintiffs who join this case pre-judgment and post-judgment interest at the statutory rate; and,

E. Compensatory and punitive damages under O.R.C. § 2307.60;

   F. Award Named Plaintiff his costs and attorneys' fees incurred in prosecuting this action and such further relief as the Court deems equitable and just.

Dated: November 1, 2023

Respectfully submitted,
**BARKAN MEIZLISH DEROSE COX, LLP**

*/s/ Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com

*Attorney for Plaintiff.*

## JURY DEMAND

Plaintiff requests a trial by jury on all of their claims.

*/s/ Robert E. DeRose*
Robert E. DeRose